**ALLSTATE HOMECRAFT, INC.**
**Classic Products, Inc.**

v.

**KAISER ALUMINUM AND**
**CHEMICAL SALES, INC.**

**Civ. A. No. H–84–3580.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 2, 1987.

---

Jerry H. Salomone and Mark Zeidman of Fuller, Salomone & Smith, Houston, Tex., for plaintiffs.

H. Lee Godfrey, Barbara Lowe and Robert A. Rowland of Susman, Godfrey & McGowan, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

STERLING, District Judge.

This case came on for trial before the Court and a jury. After three and one-half days and before the close of Plaintiffs' case in chief, the Court ruled from the bench that it would dispose of the case. The basis for the Court's action is that in the course of the proceeding it became clear that; (1) no fact material to the Plaintiffs' case was in dispute, (2) notwithstanding repeated solicitation by the Court, Plaintiff ALLSTATE HOMECRAFT, INC. ("A.H., INC.") was unable to articulate any legal theory upon which it might show itself entitled to relief from the Defendant, and (3) that the testimony of its witness and president, Don Miller, irrefutably negated the claim of fraud brought by CLASSIC PRODUCTS, INC. ("CLASSIC"). In support of this its order adjudicating the case, the Court sets forth the following undisputed facts and its conclusions of law.

*Undisputed facts:*

1. That some Kaiser aluminum shingles, produced in some particular colors, and installed in some geographic areas (including Houston, Texas) have failed to live up to the promotional claims made of them by Kaiser, i.e., some shingles have "peeled"; i.e., the paint did not adhere to the aluminum surface.

2. That Kaiser warranted its shingles against such peeling for 20 years.

3. That Kaiser's warranty gave it the option to repair or replace, on a prorated basis, any product which failed.

4. That Kaiser has negotiated settlement of some warranty claims by exchange of a cash settlement to the homeowner for a written release of Kaiser by the homeowner.

5. That Allstate Homecraft, Inc., a plaintiff herein, did not exist prior to May 1, 1981.

6. That Allstate Homecraft, Inc. never bought any aluminum roofing material from Kaiser.

7. That Allstate Homecraft, Inc. never installed a Kaiser aluminum roof.

8. That prior to December 31, 1980, Kaiser had ceased to manufacture or sell the aluminum roofing material involved in this lawsuit.

9. That Classic bought from Kaiser its equipment and machinery designed to produce and be used by Kaiser to fabricate the "Rustic shingle" formerly manufactured and marketed by Kaiser.

10. That the terms of such sale of equipment were "as is", "where is."

11. That prior to sale Kaiser provided Classic with the names of at least 2 distributors of Kaiser shingles who had experienced paint failure.

12. That prior to sale Classic had actual notice of at least 2 distributors and at least 1 commercial end user of the Kaiser shingle who had experienced paint problems.

13. That with such actual knowledge, Classic thereafter proceeded to consumation of the sale.

14. That Kaiser, prior to sale, declined to offer for sale its paint process for the stated reason of "potential legal liability."

15. That Classic, with actual knowledge of Kaiser's position regarding its paint process, proceeded to consumation of the sale.

16. That after the sale of the subject machinery, etc., and with actual knowledge of Kaiser customers who had experienced paint adhesion problems, Classic sought to obtain and obtained from Kaiser the trade marks and trade names applicable to the shingle Classic then produced.

17. That Classic was at no time a "customer" of Kaiser.

## CONCLUSIONS OF LAW:
## PROCEDURAL

A district court has the inherent power to dismiss a case at any time for

failure to prove a claim. *D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 3 (1st Cir.1984). Implicit in this concept is the power to dismiss where, as here, the Plaintiff has failed even to state a claim. The court may effectively control and manage its affairs to achieve the expeditious disposition of cases. *Id.*, 736 F.2d at 4. There is no absolute requirement that a dismissal be delayed until the close of a plaintiff's case. *Mercado v. Austin Police Dept.*, 754 F.2d 1266, 1269 (5th Cir.1985). It is within the discretion of the trial judge to invite a litigant to move for involuntary dismissal and for the judge to then grant the motion. *Id.*, 754 F.2d at 1266. It is the duty of the trial judge to conduct the litigation process economically and efficiently. *Id.*, 754 F.2d at 1269. The trial judge has the inherent power to control and manage the affairs of his court and he is charged with the duty to conduct the trial process with due efficiency. Therefore, as in this case, when the matter before the Court is one of those rare and exceptional cases in which a court upon due consideration of the substantive rights of the parties sees fit to dispose of the action before the close of the plaintiff's case, a requirement that the Court solicit a motion by the defendant then immediately grant the motion would be superfluous, the goal being attainable by the Court's sua sponte treatment of the matter.

"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict." *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

The standard for ordering a directed verdict is set forth in the often cited *Boeing* case:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just the evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper ... A mere scintilla of evidence is insufficient to present a question for the jury ... There must be a conflict in substantial evidence to create a jury question.

*Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969).

## DISCUSSION AND CONCLUSIONS OF SUBSTANTIVE LAW

This cause of action was brought by two separate entities: ALLSTATE HOMECRAFT, INC., ("A.H., INC."), an entity engaged in the installation of such items as aluminum roofing material similar to that at the heart of this case, and CLASSIC PRODUCTS, INC. ("CLASSIC"), a producer of aluminum roofing material which bought from KAISER the rights and machinery necessary to manufacture the type of aluminum shingles formerly produced by KAISER. A.H., INC. presented its evidence first. When evidence going to the issue of damages was the only remaining element of A.H., INC.'s case yet to be explored, CLASSIC proceeded to put on factual evidence of its seminal claim alleging fraudulent acts and omissions by KAISER relating to the sale of the aluminum shingle product line.

With the exception of the fraud claim of CLASSIC the Plaintiffs were unable to articulate any cognizable grounds for relief. Notwithstanding a veritable laundry list of legal theories, the Court was unable to elicit from counsel upon which of them the Plaintiffs might reasonably expect to prevail. In an attempt to debride the litigatory laceration laid open by Plaintiffs' blunderbuss pleading, the Court begins with the distinct fraud claim and shall proceed to address the remaining claims and classes of claims levelled against Kaiser.

■ The fraud claim is easily treated. CLASSIC alleged in its complaint that KAISER withheld information pertaining to problems of paint adhesion known to KAISER prior to sale of the product line to CLASSIC. At trial CLASSIC's president, Don Miller, testified to facts which irrefutably negate the allegations of the complaint. Miller admitted that CLASSIC had actual notice from KAISER of at least two customers who had experienced problems of paint adhesion. He further stated that CLASSIC made no effort to investigate those problems. Miller also admitted knowledge gained prior to finalization of the KAISER/CLASSIC sale of at least one commercial end user who had experienced similar paint failure problems. Again, CLASSIC made no inquiry, and subsequently moved forward to consumate the sale. Moreover, prior to consumation of the sale KAISER informed CLASSIC that the paint process would not be included in the transfer due to possible legal exposure. Again, with that knowledge, CLASSIC moved forward. Miller's testimony clearly eviscerates CLASSIC's claim of fraud by eliminating the essential element of reliance. *See Riquelme Valdes v. Leisure Resource Group, Inc.,* 810 F.2d 1345, 1349–50 (5th Cir.1987). The testimony was clear and unequivocal and reasonable minds could not differ as to its effect; therefore, the issue of fraud in the circumstances surrounding the sale to CLASSIC is foreclosed and no relief may be had.

The remaining claims are not so briefly disposable for they include a range of matters from alleged violation of Texas' Deceptive Trade Practices Act, Tex.Bus. and Com.Code Ann. § 17.01 et seq., to defamation and include a universe of tort and contract theories.

As a threshold matter the Court notes one essential and undisputed set of facts: ALLSTATE HOMECRAFT, INC. is an entity which did not exist prior to May 1, 1981; by that date KAISER had ceased production and sale of the roofing materials at issue in this case. Thus, A.H., INC., never bought roofing products from KAISER nor did it ever install a KAISER aluminum roof.

As a matter of background, an individual, Bill Wilson, had done business under the assumed name of Allstate Homecraft for many years. Mr. Wilson and KAISER maintained a business relationship until Wilson decided to retire. At about the same time KAISER made the business decision to get out of the aluminum shingle business. Meanwhile, individuals who had formerly been in indirect competition with Wilson initiated efforts to purchase Wilson's "company."

Relevant to the cessation of business by Mr. Wilson d/b/a Allstate Homecraft and the incorporation of ALLSTATE HOMECRAFT, INC. are two items of documentary evidence: the incorporation documents of A.H., INC. (plaintiffs' exh. 112), and a purchase and sale agreement (plaintiffs' exh. 628) between Mr. Wilson and S.R. Hinds, Trustee, which purports to transfer Wilson's interest in Allstate Homecraft Co. to A.H., INC. Construction of these documents is within the province of the Court.

Without drawing untoward inference the Court notes that these two instruments are inconsistent. The patent inconsistency exists between the date of incorporation as reflected on A.H., INC.'s certificate of incorporation (May 4, 1981) (plaintiffs' exh. 112.009), that same date being affirmed in the corporate minutes of the first meeting of the board of directors (plaintiffs' exh. 112.028) which minutes were approved by "William A. Wilson, Chairman," and "Stephen R. Hinds, Secretary" (plaintiffs' exh. 112.033), and the recitals contained in the referenced Agreement for Sale (the "Agreement"). The clear language of the Agreement is that as of June 12, 1981, no organizational meeting of the intended A.H., INC. had yet occurred. The Agreement was signed by "S.R. Hinds, Trustee," and "William A. Wilson, individually and as President of Allstate Homecraft" (plaintiffs' exh. 628). Nonetheless, the Court looks to the Agreement as a whole to ascertain the intent of the parties thereto; further, at this stage in the proceedings, the Court must and shall allow every reasonable intendment in favor of the Plaintiffs.

It appears that the Agreement was intended to transfer to A.H., INC. all of the assets of Allstate Homecraft Co.: the company name; the new corporate charter; the unenumerated assets of the company. In essence the sale was "lock, stock and barrel." Within the agreement Wilson warrants that the assets he is selling are wholly unencumbered. He convenants to indemnify A.H., INC. against any and all liabilities of Allstate Homecraft Co. The Agreement provides that any liability of Wilson arising out of breach of the covenants, warranties or representations contained therein are limited to the amount of consideration received pursuant to the sale.

The terms of the Agreement are relevant to the claims of A.H., INC. in this suit. As a general matter, A.H., INC. avers there is no adequate remedy at law of which it may avail itself in the event that end users of KAISER products should seek to hold A.H., INC. liable for damages attributable to peeling roofs. Keeping in mind that since its inception A.H., INC. has neither purchased nor installed any roofing products manufactured or warranted by KAISER, it is clear from the terms of the Agreement that Wilson covenanted to indemnify A.H., INC. against the very class of potential liability which A.H., INC. anticipates by this suit. Additionally, the Texas Deceptive Trade Practices Act affords a statutory basis by which Wilson, if not A.H., INC., may be indemnified against such claims. Tex.Bus. and Com.Code Ann. § 17.55 (Vernon Supp.1987). It is well to note that no homeowner, more specifically no one for whom Wilson (or A.H., INC.) installed a KAISER roof, is a party to this suit.

■ The circumstances leading to the creation of ALLSTATE HOMECRAFT, INC. are also material to an analysis of what the Court would refer to as the inverse alter ego theory propounded by A.H., INC. A.H., INC. would have the Court perceive it as one in the same with Mr. Wilson d/b/a Allstate Homecraft Co. This the Court declines to do. Citing the Court to case law espousing the established principle that an individual engaged in business under an assumed name may not cut off his personal liability for acts and omissions occurring prior to incorporation by the mere act of incorporation, Plaintiffs would have this Court transmogrify the concept to the effect that by the mere act of incorporation the newly formed entity accedes to a broad range of characteristics and rights attributable to the predecessor. That is to say, A.H., INC. asserts the position that it is, from May 4, 1981, forward, everything that William A. Wilson d/b/a Allstate Homecraft Co. was. This reasoning the Court cannot accept; particularly where, as here, the incorporation was conceived and undertaken as a mechanism by which Mr. Wilson was to cease doing business rather than a device by which he would continue in business. Although Wilson was employed by A.H., INC., it was not on his own initiative, but at the urgings of the corporate owners.

Among the attributes A.H., INC. would have the Court recognize as having passed unimpaired from Wilson are the following:

(a) the status of a consumer, as the term is defined in the Texas DTPA, of products Wilson purchased from KAISER for resale to homeowners;

(b) the privity of contract Wilson enjoyed in his durable relationship with KAISER;

(c) the status of a third party beneficiary to the warranty by KAISER of its products sold and installed by Wilson; and

(d) the class of benefits which may have inured to Wilson predicated on the concepts of "course of dealing" and "usage of trade."

The list may not be exhaustive nor is it prone to pellucid explication. Plaintiffs were unable clearly to chronicle the genesis of their standing to sue; the Court is hard pressed to do so in their stead. Suffice it to say that on solicitation by the Court Plaintiffs were unable to present any authority from which the Court could reasonably conclude that any legal basis exists, even remotely within the context of the undisputed facts, by which A.H., INC. may avail itself of Wilson's thirty year business history and recover money damages and/or

injunctive and declaratory relief against KAISER.

■■■ With regard to Plaintiff's DTPA claims, it is the conclusion of this Court that neither Plaintiff is a consumer as to KAISER. The statutory definition of consumer is: "an individual ... [or] corporation ... who seeks or acquires by purchase or lease, any goods or services ..." Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon 1987 Supp.). Neither A.H., INC. nor CLASSIC sought or acquired roofing products from KAISER. Noting that privity is not required, one establishes his standing as a consumer in terms of his relationship to a transaction. The sole requirement is that goods or services sought or acquired by the consumer form the basis of his complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981). Plaintiffs are not consumers for purposes of this suit.

Having proceeded under the DTPA, Plaintiffs are subject to its provisions. Notably, Section 17.50(c) provides for award of costs upon finding by the court that the action was "groundless and brought in bad faith, or brought for the purpose of harassment ..." Tex.Bus. & Com.Code Ann. § 17.50(4) (Vernon 1987 Supp.). Texas courts have interpreted this section to encompass a mixed question of fact and law. *See Schott v. Leissner,* 659 S.W.2d 752 (Tex.App.—Corpus Christi, 1983) and cases there cited. *See also Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984) (per curiam opinion refusing writ n.r.e.). Due to the state of the law in Texas and that no factual finding has or may be made in this case, the Court declines to impose costs pursuant to this section.

■■ As to the equitable relief sought by Plaintiffs, A.H., INC. and CLASSIC would have this Court invade the business operations of KAISER for an indefinite period. First, Plaintiffs seek to enjoin KAISER from any present or future efforts to settle warranty claims by cash settlement. Whether cash settlement was an option under its original warranty or not, such a restriction on KAISER's ability to negotiate an amicable solution to warranty claims would be a wholly unwarranted intrusion into the rights of both KAISER and its customers; an intrusion this Court is unwilling to make. If some dissatisfied homeowner wishes to assert that cash settlement is inappropriate or that KAISER's warranty fails of its essential purpose, that would be a question properly litigated in a different case between different parties.

Plaintiffs would also have this Court order KAISER to fund a process of inspection by Plaintiffs of every KAISER aluminum roof in existence. If in that process Plaintiffs determine that any such roof is defective, KAISER would be ordered to bear the cost of replacement material supplied by CLASSIC and the cost of the replacement process undertaken by A.H., INC. Such an order would compel KAISER to finance an operation over which it had no control: installation by A.H., INC., an entity both legally and factually distinct from any with which KAISER has ever dealt, of a product manufactured by CLASSIC and not subject to any qualitative standards enforceable by KAISER. If such a Court imposed program did not in and of itself void the warranty originally provided by KAISER, KAISER, in any event, would be put in a position of staking its reputation, no matter how good or bad, on the abilities of others beyond its control. Moreover, those to whom KAISER would be compelled to entrust its reputation are the very parties with whom KAISER has been engaged in vitriolic litigation for over two years. The Court is not persuaded to impose such stringent orders upon KAISER. Indeed, the Court concludes as a matter of law that A.H., INC. and CLASSIC have failed to articulate any cognizable legal basis upon which they or either of them is entitled to such relief.

Having concluded that neither of Plaintiffs occupies any specialized relationship with KAISER, the Court now addresses the broader claims asserted. The list is long and inclusive: gross negligence; fraud; deceit; misrepresentation and unconscionability. Plaintiffs also allege tortious interference with contract, disparagement, lost profits, lost opportunities and

unjust enrichment. Of the first group above each depends upon some established relationship between the parties. As to CLASSIC, the circumstances surrounding the initial sale of equipment have already been addressed. Beyond that, neither plaintiff has had any dealings with KAISER, either directly or indirectly, upon which claims of this ilk might be premised. Quite simply, Plaintiffs have made no showing of entitlement to stand as beneficiaries of any KAISER warranty, express or implied.

The second group of allegations is equally fallacious and derives from two distinct concepts. The least absurd premise is that KAISER, by declining to do on its own what the Court is also unwilling to order, that is, sanction and finance inspection, repair and replacement of defective roofs by A.H., INC. with CLASSIC's product, it has somehow unlawfully infringed the rights of Plaintiffs. The undisputed evidence is that when KAISER was informed[1] of problems with its roofing material it would engage in an attempt to satisfy its warranty obligations. It is further undisputed that for a period of time one option offered by KAISER as a repair was to repaint the roof or a portion of it in situ. (Plaintiffs strongly contend that painting is not a proper "repair" within the terms of KAISER's warranty, an issue which, even if otherwise viable, Plaintiffs have demonstrated no standing to raise.) The painting option was not entirely successful; thereafter, KAISER began a program by which it offered a cash settlement linked to its pro rata repair/replacement warranty schedule. It is Plaintiffs' position that these efforts undertaken by KAISER in an attempt at satisfaction of its warranty obligation to homeowners constitute an actionable wrong perpetrated against A.H., INC. and CLASSIC. It is the conclusion of this Court that as a matter of law A.H., INC. and CLASSIC are complete strangers to the warranty relationship between KAISER and end users of its product with whom neither A.H., INC. nor CLASSIC had any cognizable legal relationship. Any in-

jury that Plaintiffs or either of them may have suffered is simply too speculative and too remote to be attributable to any acts or omissions of KAISER.

The second prong of Plaintiffs' claims of disparagement, et al, borders on the ludicrous. In essence Plaintiffs would have this Court visit liability on KAISER for an indeterminate amount of purely speculative damages which Plaintiffs assert they have and will in the future suffer as a result of the mere existence of peeling KAISER roofs. That a peeling aluminum roof might discourage potential buyers is in itself an acceptable proposition. But, for a manufacturer of a different, admittedly compatible roof and a roofing installer to invoke the power of this Court in an effort to have the producer of the peeler pay pecuniary damages is patently absurd.

## CONCLUSION

It is the opinion of this Court that, as a matter of law, Plaintiffs have proffered no legally cognizable claim upon which relief can be granted. Any damages which either of them may have sustained is not the result of any act or omission of KAISER. In the context of the instant action no legal duty of KAISER to either Plaintiff has been shown to have existed (noting the exception relevant to the KAISER/CLASSIC sale). Where no duty exists, none can be breached. It is, therefore,

ORDERED, ADJUDGED and DECREED that Judgment be and hereby is entered in favor of KAISER ALUMINUM and CHEMICAL SALES, INC., and that Plaintiffs ALLSTATE HOMECRAFT, INC. and CLASSIC PRODUCTS, INC. take nothing by way of this suit; it is further ORDERED that all costs of this action are taxed against Plaintiffs.

---

**1.** The Court notes that often homeowners would first contact A.H., INC. to report problems. It is undisputed that the usual initial response to such inquiries was "call KAISER."